**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 1:23-cr-137-2 (CRC)** |
| | : | |
| **WILLIAM HUNTER,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant William Hunter (hereafter, the "Defendant").[1]  For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 228 months of incarceration, to be followed by 60 months of supervised release.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Defendant played an instrumental role in orchestrating this carefully coordinated conspiracy which, as this Court is aware, ultimately resulted in multiple robberies of South Asian jewelry stores and the theft of millions of dollars in gold across an eighteen-month time period. The crime spree began in January 2022, continued through March 2023 when the Defendant was arrested, and persisted until August 2023, ultimately ending only when several of the Defendant's co-conspirators were charged and arrested as part of a multi-state law enforcement operation. Before their apprehension, however, the Defendant and his co-conspirators successful robbed at least ten jewelry stores of millions of dollars in jewelry, terrorizing multiple victims and leaving behind a wake of destruction and financial loss.

---

[1] Sentencing is scheduled for December 11, 2024.

Each robbery was carefully coordinated in advance of its commission and employed a similar *modus operandi*, one that the co-conspirators seemed to hone and perfect over time and with each new criminal act. As part of their *modus operandi*, the Defendant and his co-conspirators deliberately targeted South Asian jewelry stores because these stores often sold a higher purity in gold, which equated to more cash in their pockets. The co-conspirators researched such stores to select their targets before meeting in Washington, D.C. (hereafter, "D.C.") and traveling in one or more "getaway" vehicles to the location of their chosen victim. To evade law enforcement detection, some of the suspect vehicles were stolen and/or outfitted with stolen tags. This includes at least one vehicle carjacked by this Defendant and others at gunpoint on September 11, 2022, and later used in a robbery on September 20, 2022, as further detailed below.

The co-conspirators often "cased" the store in advance of the robbery, researching their intended targets and gaining access by a variety of means, including using ruses, following customers or employees in, or using sledgehammers to shatter a store's door or windows before storming in. The co-conspirators employed a show of force to gain compliance from their victims, with at least one co-conspirator armed with a firearm in each instance to act as "crowd control" and subdue employees and customers. They wore dark clothing, masks, and gloves to conceal their identities and used hammers to smash the glass display cases, filling bags with gold jewelry and resulting in significant damage throughout the stores. In every single instance, however, the Defendant and his co-conspirators terrorized the store's owners, employees, and/or customers by engaging in an armed takeover of the store and then ransacking it before fleeing.

On March 6, 2023, in Washington, D.C., law enforcement arrested the Defendant on an outstanding arrest warrant issued out of Maryland arising from an October 22, 2022 armed carjacking. At the time of his arrest, the Defendant had a Glock 23 .40 caliber handgun with an

obliterated serial number in his waistband, which was loaded and had an extended magazine. That same day, law enforcement executed a residential warrant at the Defendant's D.C. residence and recovered, among other items, 135 live rounds of assorted ammunition, four rifle magazines, one speed loader, and an AR-15 rifle drum magazine. They also recovered clothing that appeared consistent with some worn by the Defendant during the commission of robberies, along with a crowbar and a hammer.

On or about March 21, 2023, a federal grand jury indicted the Defendant in case number 23-cr-90 (CRC) on one count of Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g), stemming from the firearm recovery during his arrest on March 6, 2023. On or about April 25, 2023, a federal grand jury indicted the Defendant and Trevor Wright in the instant matter on one count of Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, in relation to an armed robbery of Paradise Jewelry Store ("Paradise") [ECF No. 1]. On August 17, 2023, a federal grand jury returned a 19-count Superseding Indictment, charging the Defendant and his co-conspirators in connection with nine armed robberies in New Jersey, Pennsylvania, Florida, and Virginia, with substantial planning and coordination occurring in D.C. [ECF No. 10]. On March 12, 2024, a Second Superseding Indictment was filed, adding charges related to two additional robberies, including one in D.C., as well as charges related to the recovery of firearms and narcotics from multiple residences associated with the co-conspirators [ECF No. 134].

On September 4, 2024, pursuant to a plea agreement [ECF No. 206], the Defendant plead guilty to a two-count Superseding Information, charging Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Count One), and Possession of a Firearm in Furtherance of Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two)

[ECF No. 206].  In so doing, the Defendant accepted responsibility for his involvement in the following six armed robberies, detailed further *infra*: (1) the January 7, 2022 armed robbery of Yasini Jewelers (hereafter, "Yasini") in Falls Church, Virginia; (2) the September 20, 2022 armed robbery of Sonia Jewelers and Boutique (hereafter, "Sonia") in Springfield, Virginia; (3) the October 25, 2022 armed robbery of Paradise Jewelry (hereafter, "Paradise") in Paterson, New Jersey; (4)  the November 10, 2022 armed robbery of Baral Jewelers and Gift Center (hereafter, "Baral") in Harrisburg, Pennsylvania; (5) the November 27, 2022 armed robbery of Sara Emporium Jewelry (hereafter, "Sara") in Jersey City, New Jersey; and (6) the January 27, 2023 armed robbery of Princess Diamonds ("Princess") in Falls Church, Virginia.

   i.   *January 7, 2022 Armed Robbery of Yasini Jewelers (Falls Church, VA)*

On January 7, 2022, the Defendant committed the group's inaugural robbery at Yasini, the success of which ultimately set in motion the broader scheme to rob gold jewelry stores and launched the beginnings of the conspiracy that would ultimately wreak such havoc.  Around 12:44 p.m., the Defendant and an unidentified co-conspirator arrived at the store and walked around, pretending to browse for approximately thirteen minutes.  When the store owner unlocked a display case, the Defendant abruptly drew a handgun from his waistband and held it in front of him, as depicted below in Figure A.  With his free hand, the Defendant reached over the counter, pulling out trays of bangles for his co-conspirator to gather.  *See* Figure B.

 

***Figures A-B: Surveillance of January 7, 2022 Armed Robbery of Yasini***

The Defendant walked towards the front door with a tray in hand as if to leave; however, something caught his eye. Suddenly, he spun around near a terrified customer and pointed his firearm while directing an employee to retrieve a necklace from a shelf, as shown in Figure C below.



*Figure C: Surveillance of January 7, 2022 Armed Robbery of Yasini*

The Defendant ultimately grabbed the necklace and quickly walked out of the store. He and his co-conspirator escaped with approximately $300,000 to $400,000 in jewelry. Further demonstrating his cunning, the Defendant melted the stolen jewelry into gold bars, which served the dual purpose of: (i) facilitating its conversion to cash; and (ii) rendering it untraceable. He then enlisted the help of his brother, Franklin Hunter, to sell the gold. In Figure D below, an image from Franklin Hunter's phone—dated January 16, 2021—shows some of the stolen gold once melted into bars. According to Franklin Hunter's text message, depicted in Figure E, the smaller gold bars were priced at $30,000 each, while the larger were $60,000 each.



*Figure D:  Stolen Yasini Gold Melted into Bars*



*Figure E:  Franklin Hunter Text Messages on Pricing for Stolen Yasini Gold*

ii.    <u>*September 11, 2022 Armed Carjacking in Lanham, MD*</u>

On September 11, 2022, at 5:46 p.m., in Lanham, Maryland, the Defendant and two others carjacked at gunpoint two victims, stealing their two vehicles—one black 2018 Lexus GX460 SUV

and one white 2020 Lexus GX460.[2]  According to the victims, two suspects exited a black Infiniti sedan, displayed a handgun while demanding their property, and ultimately drove away in the victims' two vehicles.  The third suspect left the scene in the black Infiniti sedan.[3]  Nine days later, the Defendant and his accomplices used the stolen black Lexus as the getaway vehicle in the armed robbery of Sonia Jewelers, detailed *infra*.

### iii.    <u>September 20, 2022 Armed Robbery of Sonia Jewelers (Springfield, VA)</u>

On September 19, 2022, the Defendant texted co-defendant Wright the address for Sonia in Springfield, Virginia.  The next day, on September 20, 2022, the Defendant and co-defendant Lamont Marable committed an armed robbery of Sonia in Springfield, Virginia.  The Defendant outfitted the carjacked black Lexus SUV with an incorrect tag and used it as the getaway vehicle for the Sonia robbery.  During the robbery, they ransacked the store, causing extensive damage and stealing gold jewelry valued at approximately $130,000.

Specifically, surveillance video shows Marable first arriving at the store around 11:40 a.m., wearing what appeared to be an Islamic prayer cap and a thobe, an article of clothing often worn by Muslim men. Shortly after a store employee granted Marable access to the store through a locked front door, Marable pulled out a firearm with an extended magazine.  He then pointed it at employees, as seen below in Figure F.

---

[2] On September 13, 2022, law enforcement stopped the stolen white Lexus in Bordentown, New Jersey, whereupon its occupants, including codefendant Jameise Christian, were ultimately apprehended.

[3] The United States has insufficient evidence to determine whether the Defendant was the armed gunmen or the driver in the Infiniti sedan.



***Figure F: Surveillance of September 20, 2022 Armed Robbery of Sonia***

One of the victims reported that Marable either commanded them to not move or threatened to shoot.  After jumping over the counter, Marable began grabbing gold jewelry.  He then pointed his gun at an employee and ordered that the door be unlocked for the Defendant, who entered and began smashing glass display cases with a hammer, filling a bag with gold jewelry.  Figure G depicts the Defendant from surveillance of the robbery.



***Figure G: Surveillance of September 20, 2022 Armed Robbery of Sonia***

Once content with their loot, the Defendant and Marable fled back to D.C. in the carjacked vehicle, leaving it in the parking lot adjacent to the Defendant's D.C. residence, where law enforcement ultimately found it that same day.  Inside the vehicle, law enforcement found jewelry and display cases consistent with those taken from Sonia, broken glass, and a prayer cap and thobe consistent with that worn by Marable during the robbery.

As referenced in the victims' impact statements, appended hereto as Exhibits 1 and 2, the toll

iv.    <u>*October 25, 2022 Armed Robbery of Paradise Jewelers (Paterson, NJ)*</u>

On October 25, 2022, at approximately 3:56 p.m., the Defendant and co-defendants Trevor Wright, Jameise Christian, and Keith McDuffie committed an armed robbery of Paradise in Paterson, New Jersey, robbing the store of jewelry valued at approximately $1,932,230.60.

A few days before the robbery, Wright and the Defendant exchanged texts about obtaining the getaway cars required to commit the robbery. Wright instructed McDuffie to rent a fast vehicle with tinted windows for a "big money play." On October 23, 2022, when McDuffie rented a Volkswagen Atlas with no tinted windows, Wright instructed him to bring the car to "my man" to have them tinted, providing McDuffie with the Defendant's address in D.C.

On the morning of the robbery, the Defendant asked Wright to get laundry net bags, which were ultimately used to carry the stolen gold from the store. The Defendant drove himself, Christian, and an unidentified co-conspirator to the jewelry store in the rental Volkswagen Atlas, bearing a stolen license plate. Meanwhile, Wright drove himself and McDuffie in another getaway vehicle, a Dodge Charger, that Wright had procured.

Around 3:56 p.m., the Defendant, Christian, and the unidentified co-conspirator ran together from their vehicle and towards the store. The gunman, believed to be Christian, pointed a gun with an extended magazine at a victim standing outside the front door of the store, prompting the employee inside the store to buzz them all in. Once inside, the gunman pointed the firearm at the employee behind the counter, ultimately jumping over the counter to grab gold as depicted below in Figure H.

 

***Figure H: Surveillance of October 25, 2022 Armed Robbery of Paradise***

The Defendant, armed with a hammer as shown in Figure I, smashed the glass display cases and shoveled gold into a bag while the unidentified co-conspirator also collected stolen gold in his own laundry bag.



***Figure I: Surveillance on October 25, 2022, Depicting the Defendant***

They ran together from the store into the Volkswagen Atlas, swiftly fleeing in tandem with the Dodge Charger that Wright and McDuffie occupied. That same day, Wright instructed his

personal driver to meet the Defendant and other co-conspirators at the Defendant's house to drive them down to Miami, Florida, where Wright's fence was. The next day, on October 26, 2022, Wright texted the Defendant the breakdown of gold, measured in grams, stating, "we got 6k, I got 2, You got 2, Gino 1, Ace 1." After the robbery, on October 29 and November 1, 2022, the Defendant posted to his social media account images of himself with stacks of cash, a firearm, and a wristwatch, as depicted in Figure J below.



***Figure J: Images Posted on October 29 and November 1, 2022 to the Defendant's Instagram Account***

  v.  *November 10, 2022 Armed Robbery of Baral Jewelers (Harrisburg, PA)*

On November 10, 2022, at around 6:30 p.m., the Defendant and several co-conspirators, including Timothy Conrad, Franklin Hunter, Robert Sheffield, and Andrew Smith, committed an armed robbery of Baral in Harrisburg, Pennsylvania, robbing the store of an estimated $1,000,000.00 in gold jewelry. Prior to the robbery, the Defendant and his co-conspirators traveled from D.C. to the store in two suspect vehicles. After arriving, at least two co-conspirators remained in the vehicles, which were parked in front of the store, to act as "getaway" drivers, while several

others, including the Defendant, rushed into the store. Two armed co-conspirators remained in the front of Baral, a grocery area, subduing the employees and customers there as four others, including the Defendant, ran to the rear where the gold jewelry was housed.

As employees and customers in the front of the store cowered in terror, covering their faces or ears, a gunman stalked towards the cash register, holding the store owner at gunpoint and taking approximately $600 from the cash register. Meanwhile, one of the four suspects in the rear of the store used a firearm to coerce an employee to the ground as the Defendant and two others smashed the glass display cases and shoveled gold jewelry into large bags. A screenshot from surveillance video in the rear of Baral is depicted in Figure K below with the Defendant highlighted in red:



***Figure K: Surveillance of November 10, 2022 Armed Robbery of Baral (rear of store)***

Eventually, the Defendant and his co-conspirators ran through the front grocery area, kicking over a box of produce before fleeing the scene in the two suspect vehicles. Six days after the Baral robbery, on November 16, 2022, the Defendant and Andrew Smith jointly purchased a black 2011 Mercedes Benz S63 AMG from Chantilly Auto Sales, Inc., for $40,897.30. On November 16, 2022, the Defendant published the Instagram stories depicted in Figure L below, celebrating the purchase and implying that they paid with cash.



*Figure L: screenshots from November 16, 2022 posts on the Defendant's Instagram*

vi.    *November 27, 2022 Armed Robbery of Sara Jewelry (Jersey City, NJ)*

Little more than two weeks later, on November 27, 2022, at around 4:30 p.m., the Defendant and at least four co-conspirators, including Timothy Conrad, Franklin Hunter, and Andrew Smith, committed another armed robbery, this time at Sara Jewelry (hereafter, "Sara") in Jersey City, New Jersey. The Defendant and his co-conspirators traveled from D.C. to Sara in two suspect vehicles outfitted with stolen tags, including the Mercedes Benz the Defendant had recently purchased. Upon arriving at Sara, the Defendant and four co-conspirators ran from the suspect vehicles and pushed their way into the store as a customer and his family were entering. Once inside, in just 90 seconds, the Defendant and his co-conspirators stole over $400,000.00 in gold jewelry.

After entering the store, the Defendant and his co-conspirators, who wore black clothing, masks and gloves, ordered everyone to the ground as they smashed the glass display cases and shoveled gold jewelry into bags. During the robbery, one of the co-conspirators pointed a handgun at an employee and ordered her to "open the safe or I will shoot you."[4] The employee, who was unable to open the safe, started praying before one of the suspects pushed][ her to the ground and

---

[4]  The United States has insufficient information to determine whether the Defendant was the armed suspect.

took a nearby bag containing $20.00 in currency. The Defendant and co-conspirators then fled from the store into the two suspect vehicles, which sped back towards D.C. One day after the robbery, the Defendant sent Trevor Wright the image depicted in Figure M below, which appears to be a black plastic bag containing numerous gold bangles similar to those taken from Sara Jewelry. Five days after the robbery, the Defendant posted on his Instagram account a video showcasing cash and firearms, depicted in Figure N below:



*Figure M: image sent from Defendant to Trevor Wright on November 28, 2022*



*Figure N: Screenshot of video posted on the Defendant's Instagram Account*

*vii.   January 27, 2023 Armed Robbery of Princess Diamonds (Falls Church, VA)*

On January 27, 2023, at around 12:52 p.m., the Defendant and at least two co-conspirators, including Andrew Smith, committed an armed robbery of Princess in Falls Church, Virginia. Once

again, they used their jointly-purchased Mercedes Benz as the "getaway" vehicle.  As depicted in Figure O below, once inside the store, Andrew Smith, wearing yellow gloves, pointed a firearm at employees.



*Figure O: Surveillance of January 27, 2023 Armed Robbery of Princess*

Meanwhile, the Defendant smashed display cases and bagged the gold jewelry as a third co-conspirator acted as a lookout at the door.  In total, the Defendant and his co-conspirators stole an estimated $250,000.00 in gold jewelry from Princess.  Two days after the robbery, the Defendant posted the below image, depicted in Figure P, on his Instagram account.



*Figure P: Screenshot of the Defendant's January 29, 2023 Post on Instagram*

*viii.*    <u>*March 6, 2023 Arrest in Washington, D.C.*</u>

As noted above, on March 6, 2023, law enforcement executed an arrest warrant for the Defendant that was issued out of Anne Arundel, Maryland.[5]  On his person at the time of his arrest was a black Glock 23, .40 caliber handgun with an obliterated serial number.  The firearm was loaded with 20 live rounds of ammunition in a 22-round extended magazine, depicted in Figure Q below.



**Figure Q: Firearm recovered from the Defendant on March 6, 2023**

That same day, law enforcement executed a residential search warrant in the Defendant's apartment in D.C.  Therein, they found, among other evidence, 135 live rounds of assorted ammunition and at least five magazines.

## II.    LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training."  18 U.S.C. § 3553(a)(2).  In addition,

---

[5] The warrant the Defendant was arrested on arose from an October 22, 2022 armed carjacking in the Macy's parking garage, located at 2002 Annapolis Mall Road, Unit 1295, Annapolis, Maryland.

the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
   a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) To afford adequate deterrence to criminal conduct;
   c) To protect the public from further crimes of the defendant; and
   d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
   a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i) Issued by the Sentencing Commission . . . ; and
      ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
   a) Issued by the Sentencing Commission . . . and
   b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations

relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

## III.    GUIDELINES CALCULATION

### A.    Total Offense Level

With respect to Count One, the base offense level for a violation of 18 U.S.C. § 1951 is governed by U.S.S.G. § 2B3.1. As detailed in the Final Presentence Report (the "PSR") [ECF No. 273] and the plea agreement [ECF No. 206], the aggregate offense level for Count One is 35, pursuant to U.S.S.G. § 3D1.4. After adjustments for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), the final offense level for Count One is 32. As to Count Two, the applicable guideline sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(i) is governed by U.S.S.G. § 2K2.4(b).

### B.    Criminal History Category

The PSR writer calculates the Defendant to have a total of 8 or 9 criminal history points,[6] which, in either instance, places him in Criminal History Category IV. *See* PSR ¶ 119.

### C.    Sentencing Guideline Range

For Count One, a final offense level of 32 and Criminal History Category IV results in a guidelines range of 168 to 210 months of incarceration, 1 to 3 years of supervised release, and a fine range of $30,000 to $250,000. *See* U.S.S.G. §§ 5D1.2(a)(2) and 5E1.2(c)(3). Pursuant to U.S.S.G. § 2K2.4(b), the guidelines range for Count Two is the minimum term of imprisonment set by statute, here, sixty months of incarceration, which shall be imposed consecutively to the sentence imposed on Count One, and 2 to 5 years of supervised release. As a result, the

---

[6] As referenced in Footnote 6 of the PSR, USPO requires additional information on whether the Defendant was on supervision at the time he committed the offenses underlying his guilty plea., which may result in one additional point and a total of nine criminal history points. Even so, he will remain in criminal history category IV.

Defendant's aggregate sentencing range for Counts One and Two is 228 to 270 months of incarceration.

## IV.    ARGUMENT

As stated above, the United States respectfully requests that the Court sentence the Defendant to a term of 228 months of incarceration, followed by 60 months of supervised release. As part of its plea agreement, the United States agreed to cap allocution at the bottom of the applicable guidelines. The United States respectfully submits that a sentence of 228 months is sufficient, but not greater than necessary, to serve the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### 1.    The Nature, Circumstances, and Seriousness of the Offense

Given the nature of the conspiracy at issue and the extent of the Defendant's involvement in that conspiracy, the seriousness of the Defendant's offenses and the resulting harm cannot be overstated. As this Court is aware, the conspiracy involved a carefully coordinated scheme to ransack and rob primarily minority-owned establishments using firearms and hammers, lasted over a year, and involved *at least* fifteen co-conspirators. Moreover, the fact that the co-conspirators deliberately spanned multiple jurisdictions to evade law enforcement detection highlights its sophistication, and their reign of terror was ultimately only brought to a halt by the apprehension of the co-conspirators.

The Defendant and his accomplices had no regard for the victims they terrorized—victims who experienced the nightmare of being swarmed by masked strangers pointing firearms at them. Indeed, they deliberately chose to utilize firearms with full knowledge of the effect they would have upon the victims, using guns as "crowd control" to gain compliance and ensure their criminal success. It is clear exactly what they hoped to gain by utilizing firearms and indeed took full

advantage of the fear inflicted on their victims. The impact statements from victims of the Sonia robbery, appended hereto as Exhibits 1 and 2, illustrate the toll these robberies took on victims. *See* Exhibits 1 and 2.

Moreover, the danger inherent in any robbery involving loaded firearms is self-evident, and the circumstances here reflect that danger. Indeed, some of these victims felt the press of a gun barrel against their temple or were held at gunpoint. Others suffered the indignities of being manhandled, shoved to the ground, thrown out a door, or forced to a safe at gunpoint. The Defendant and his co-conspirators ravaged the stores they robbed, spraying the stores with shards of glass and turning the victims' place of work into a chaotic crime scene. And tragically, some of the victims did not have insurance to absorb the significant losses they suffered at the hands of the Defendant and his accomplices. Put simply, the actions of the Defendant and his co-conspirators resulted in significant and lasting harm to many, harm that goes beyond mere financial losses and that is not easily forgotten.

Given the Defendant's involvement in hatching the idea to rob gold jewelry stores; the nature of his communications with the lead defendant, Trevor Wright; and the number of robberies he committed with his co-conspirators; and his recruitment of some of the co-conspirators, the United States considers him one of the primary players in the overarching scheme. Moreover, the Defendant's conduct over an extended period demonstrates a willingness to inflict violence upon others for monetary and/or proprietary gain, as well as a complete disregard for the consequences. As a result, based on the nature and circumstances of the offense, the United States' recommended sentence is warranted.

**2.      The Defendant's History and Characteristics**

In requesting a sentence at the bottom of the Defendant's sentencing guidelines range, the

United States credits his acceptance of responsibility.  Nor does the United States overlook the impact of the Defendant's difficult childhood and personal circumstances, as detailed in the PSR. *See* PSR ¶ 167.  The PSR, however, also details his substantial criminal history, which includes, among other offenses, multiple burglary convictions.  The Defendant appears to have also accumulated numerous arrests, including for offenses involving conduct similar in nature to the offenses at issue here.[7]  Indeed, it appears that the conduct in this case is not an aberration from what may be viewed as a lifelong pattern of victimizing others for personal gain.

Even so, these prior contacts with the criminal justice systems seems to have had little to no deterrent effect.  If anything, it appears the Defendant may have been emboldened by past contacts with the legal system resulting in a lack of meaningful consequences.  In sum, the United States certainly recognizes that 228 months is a significant period of incarceration, and far greater than any the Defendant has yet faced.  The Defendant's criminal history, his role in the overarching conspiracy, and the repeated nature of the Defendant's conduct, however, along with his possession of a loaded firearm at the time of his arrest, all support the substantial sentence requested by the United States.

### 3.    The Need to Promote Respect for the Law and Deterrence

As called for by the statute, the sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense.  *See* 18 U.S.C. § 3553(a)(2).  The United States respectfully submits that the need to deter the Defendant's calculated and violent conduct in this case weighs in favor of the recommended sentence.  This is particularly true in light of the fact that, despite numerous contacts with the

---

[7] As detailed in Paragraph 161 of the PSR, the Defendant is also facing pending charges in Anne Arundel County for an October 2022 armed carjacking.

criminal justice system, the Defendant has seemingly persisted in subjecting others to violence for his own pecuniary gain.

Moreover, as illustrated *supra*, after the robberies, the Defendant and his co-conspirators used social media to glorify their ability to swiftly acquire substantial amounts of money—they were not shy about exhibiting and promoting the extravagant lifestyle that followed. Of course, the stacks of cash they flaunted were not theirs to spend. The Defendant, his co-conspirators, and anyone who admired their lifestyle should understand that their actions have consequences, and the severity of those consequences render such schemes unworthwhile.

A prison sentence of 228 months is the best measure of deterrence available to the Court. Such a sentence accomplishes the aims of § 3553(a)(2) in both a general and particularized manner. As applied to the Defendant, such a sentence reflects both the seriousness and dangerousness of the Defendant's conduct in this case. With respect to general deterrence, this recommended sentence promotes respect for the law and the safety of the community by serving as a deterrent to brazen and violent conduct such as that perpetrated by the Defendant and his co-conspirators in this case.

### 4.    Other factors

The United States' recommended sentence is also justified to protect the public from the Defendant, who carried out his violent conduct not over the course of days or even weeks, but over an extended period of time, nearly up until his arrest in this case. It would also give the Defendant ample time to pursue further educational and vocational training and participate in other programs that will hopefully stop his trend towards escalating violence and recidivism in its tracks. The recommended sentence also appropriately reflects that the Defendant's encounters with the criminal justice system have, to date, not adequately deterred him from engaging in the conduct to

which he ultimately pleaded guilty in the present case.

## V.    CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the Defendant to 228 months of imprisonment, followed by a term of 60 months of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    */s/ Sitara Witanachchi*
SITARA WITANACHCHI
D.C. Bar No. 1023007
ANDREA DUVALL
AR Bar No. 2013114
Assistant United States Attorneys
U.S. Attorney's Office
Violence Reduction & Trafficking Offenses
601 D Street, NW
Washington, D.C. 20530

CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2024, a copy of the United States' Sentencing Memorandum was submitted via CM/ECF, which will transmit to counsel to the Defendant, Mr. Dwight Crawley, Esq.

*/s/ Sitara Witanachchi*
Assistant U.S. Attorney